## DULIN v. COMMISSIONER OF INTERNAL REVENUE (three cases).
### Nos. 6407–6409.

Circuit Court of Appeals, Sixth Circuit.
May 10, 1934.

Mabel Walker Willebrandt, of Washington, D. C. (Wm. Montgomery Smith, of Washington, D. C., on the brief), for petitioners.

J. M. Hudson, of Washington, D. C. (Sewall Key and Hayner N. Larson, both of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The three cases were heard and decided together by the Board of Tax Appeals, and present two questions, (1) whether a gift of corporation stock was effected by the husband when he delivered the certificate to the corporation's transfer officer with instructions to transfer the stock to his wife on the corporation's books, though the certificate was not indorsed nor the transfer actually made until a later date; (2) whether in the case of taxpayers who kept no books, and reported income neither on the basis of a calendar year nor on any other twelve-month period terminating at the end of the month, their incomes could be recast upon a calendar year basis when such recasting resulted in a deficiency due to income already returned, and when too late for the taxpayers to seek refunds.

The evidentiary facts are not in dispute. Petitioners H. L. Dulin and Eugenia Bell Dulin are husband and wife, and reside in Tennessee. In 1915 the former began the creation of a separate estate for the latter, and from time to time gave her property owned by him, consisting largely of stock in corporations subsidiary to the Anderson-Dulin-Varnell Company, a Tennessee corporation, of Knoxville. The stock transfers were attended to by one Petree, office manager of the latter company, whose duty it was to keep the stock certificate books of the various corporations, to record all transfers, cancel old and issue new certificates therein.

In addition to his duties as an employee of the corporation, Petree at various times attended to personal matters for Dulin, Mrs. Dulin, and their daughter, the petitioner Mary Catherine Dulin. He prepared their income tax returns, and kept Mrs. Dulin's dividend account for her. Early in December, 1920, Dulin advised his wife that he was transferring to her 510 shares of stock of the Anderson-Dulin-Varnell Company. The certificate for that number of shares had been issued to him in 1908. On December 23, 1920, Dulin handed this certificate to Petree,

told him that he had given the stock to Mrs. Dulin, and instructed Petree to transfer it to her on the books of the corporation. Due to the rush of Christmas business, Petree laid the certificate aside, and did nothing further with it until January 4, 1921. On that date Petree discovered that Dulin had not indorsed the certificate, whereupon he secured his indorsement, canceled the certificate, issued a new one to Mrs. Dulin, secured thereon the necessary signatures of officers of the corporation, and delivered it to Dulin for his wife. The record does not show that the certificate was ever personally delivered to Mrs. Dulin.

In 1922 Mrs. Dulin gave 250 shares of this stock to her daughter, the petitioner in case 6,407, and in 1926 both mother and daughter, sold some of their shares. They returned as income the realized increase in value of the shares from December 23, 1920, to the date of sale. The Commissioner assessed a deficiency on the ground that the gift was not consummated in 1920, but after January 1, 1921. The date of the gift is important, because, if the stock was acquired on or before December 31, 1920, the basis for ascertaining gain was the fair market value at the time of the acquisition under section 204 (a)(4) of the Revenue Act of 1926, 26 USCA § 935(a)(4), while, if the stock was acquired after December 31, 1920, the basis for determining gain was March 1, 1913, value, under section 204 (a) (2) of the same act, 26 USCA § 935 (a)(2). The Commissioner was of the opinion that the gift was not consummated in 1920, and his deficiency assessment was confirmed by the Board of Tax Appeals.

Up to and including their returns for 1924, filed March 15, 1925, the petitioners followed the practice of reporting as income all dividends received up to the date of the return. The dividends received in 1924, prior to March 15th, and in 1925 prior to the same date, were reported in the returns for 1923 and 1924, respectively. At the suggestion of one of the revenue agents, this was changed in the 1925 returns, which, however, excluded 1925 income prior to March 15, 1925, which had already been reported in the 1924 returns. The Commissioner recast the returns so as to include in each all income received during the calendar year reported, and so as to exclude all income not received in that year. Additional taxes resulted in all three years in the cases of Mrs. Dulin and Mary Catherine Dulin, and in 1924 and 1925 in the case of Dulin. The Board approved the respondent's action, holding that under the facts the applicable statute required the computation of taxable income according to calendar years.

■ The first question relates to the basis for determining the amount of taxable gain realized by Mrs. Dulin and her daughter upon the sale of stock in 1926, and solution depends upon whether Mrs. Dulin acquired title to the shares in 1920 or subsequently. The respondent contends that, when Dulin gave the certificate to Petree, he gave it to him as his agent. The petitioners claim that Petree received the stock as Mrs. Dulin's representative. The facts reasonably support either inference, and, if the determining circumstance is whether Petree was Dulin's agent, or the agent for Mrs. Dulin, then the Board's decision upon that issue is conclusive. Tracy v. Commissioner, 53 F.(2d) 575 (C. C. A. 6); Commissioner v. Isaac Winkler & Bros. Co., 53 F.(2d) 580 (C. C. A. 6); Grand Rapids Store Equipment Corporation v. Commissioner, 59 F.(2d) 914 (C. C. A. 6); Crowell v. Commissioner, 62 F.(2d) 51 (C. C. A. 6); Jeffery v. Commissioner, 62 F.(2d) 661 (C. C. A. 6).

■ We think, however, that this is not controlling. What seems to have been overlooked is that the thing Petree was instructed to do, and the only thing he was to do, was to transfer the stock upon the books of the corporation. This he could do neither as the agent of Dulin nor as the agent of Mrs. Dulin, but only in his capacity as an employee of the corporation and its transfer officer. This being so, it must follow that the delivery of the stock to Petree was a delivery of it to the corporation for the purpose of transfer, and the question to be decided is whether under such circumstances the corporation had imposed upon it some obligation or duty with respect to Mrs. Dulin so as to constitute it a trustee for her. It is conceded to be the law that, while delivery of property given is necessary to complete a gift, such delivery is not required to be made directly to the donee, but that delivery may be to a third person for the benefit of the donee. In the case of such gifts, however, constructive delivery is recognized, not on principles of agency, but because the third person becomes a trustee for the donee. Smith v. Commissioner, 59 F.(2d) 533 (C. C. A. 7); Martin v. McCullough, 136 Ind. 331, 34 N. E. 819; Grissom v. Sternberger, 10 F.(2d) 764, 766 (C. C. A. 4); Owen v. Commissioner of Internal Revenue, 53 F.(2d) 329 (C. C. A. 9). Aside from the trust relationship which arises by operation of law between one to whom the subject of a gift is delivered and the beneficial donee,

there is also a well-recognized trust relationship between a corporation and the equitable or beneficial owner of its stock, and this principle seems to be recognized by the courts of Tennessee. Caulkins v. Gas-Light Company, 85 Tenn. 683, 4 S. W. 287, 4 Am. St. Rep. 786.

■ In addition to the untenable ground that Petree received the certificate as the agent of Dulin, the Board based its decision upon the ground that the certificate was not indorsed nor transferred upon the books of the corporation until after December 31, 1921. We think the Board in error in its application of the law. There is no longer doubt that delivery of stock certificates with the intention of conveying title thereto is effective as a conveyance without indorsement. Nor is the transfer of stock upon the books of the corporation indispensable as between donor and donee. Grissom v. Sternberger, supra; Owen v. Commissioner, supra; Smith v. Commissioner, supra; Johnston v. Laflin, 103 U. S. 800, 26 L. Ed. 532; 12 R. C. L. 942. Of course, intention to transfer title must be clear, and the transfer of certificates upon the corporation's books is perhaps the best indication of such intention, Marshall v. Commissioner, 57 F.(2d) 633 (C. C. A. 6), but that intention may be otherwise shown is not open to dispute. As was said by Judge Parker in the Grissom Case, which involved the application of a statute of North Carolina requiring transfer of certificates upon the books of the corporation, in answer to a contention that a gift was ineffectual because certificates were not indorsed and the stock not transferred, "Neither of these things was essential to the validity of the gift." The requirement of the statute, and, we may add, the requirement of the corporation's by-law, is for the protection of the corporation, and the failure to enter such transactions upon the corporate books has no effect upon the legality of the transfer as between the parties themselves. Cases are sufficiently cited in Judge Parker's opinion, and the law of Tennessee is not otherwise. Parker v. Bethel Hotel Company, 96 Tenn. 252, 34 S. W. 209, 31 L. R. A. 706. It is urged that, on the question of indorsement and transfer, the authorities are conflicting, and that in the interest of uniformity the rule of the Uniform Stock Transfer Act, 1932 Tenn. Code § 4094, should be followed. The answer to that suggestion, however, is that the weight of state and federal authority is the other way, that

the Tennessee cases are not contra such holdings, and that the Uniform Stock Transfer Act was not adopted in Tennessee until 1925, five years after the delivery of the stock by Dulin.

■ We conclude, therefore, that on the first question presented the evidence permits of but one reasonable inference with respect to delivery, that is, that the certificate was delivered by Dulin to Petree in the latter's capacity as transfer clerk of the corporation; that such delivery, coupled with instruction to transfer the stock to Mrs. Dulin, was a delivery to the corporation as trustee for her, a complete surrender of control or dominion by Dulin, and effectuated the gift on the date of delivery, December 23, 1920. The question of acceptance is not here involved. The law presumes the acceptance of a gift beneficial to the donee and imposing no burden on him, Scott v. Union, etc., Bank & Trust Co., 123 Tenn. 258, 130 S. W. 757, and the Board specifically found that Mrs. Dulin had indicated her acceptance of the gift.

■ On the second question raised by the petitions we are in accord with the decision of the Board. Section 212(b) of the Revenue Acts of 1924 and 1926 (26 USCA § 953(b) requires that income be computed on the basis of either a fiscal or a calendar year. Section 200 (a), 26 USCA § 931(a), defines a fiscal year as an accounting period of twelve months ending on the last day of any month other than December. Since the petitioners, if they had any annual accounting period other than a calendar year, had one ending not on the last day of the month, but on the 15th, they did not bring their accounting period within the definition of fiscal year given in the statute. Failing to do so, their accounting should have been based upon the calendar year, and it was within the province of the Commissioner to recast their income on the calendar year basis. That such recasting resulted in the inclusion in 1924 and 1925 returns of income upon which tax had already been paid on the other basis, and that such tax could not be recovered by petitions for refund, is unfortunate, but the error which brought about the unhappy result was the error of the taxpayers and not of the respondent, and, in any event, it is not one from which the court can under the law grant relief.

The orders are set aside, and the cases remanded to the Board for further proceedings consistent herewith.