## CONLON v. TURLEY.

(Court of Appeals of District of Columbia. Submitted December 11, 1925. Decided January 4, 1926.)

No. 4272.

1. **Gifts ⊙⇒4—Delivery with intent of donor to divest himself of title essential to valid "gift inter vivos."**

It is essential to a valid gift of property inter vivos that there be an actual delivery to donee, with intent of donor to divest himself of title, dominion, and control, and to invest donee therewith.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gift Inter Vivos.]

2. **Gifts ⊙⇒21—Delivery to agent or trustee for donee is sufficient to complete valid gift.**

A delivery to a third person as agent or trustee for donee, under circumstances indicating relinquishment of control, is sufficient to complete valid gift, which is not revoked by death of donor before actual delivery to donee.

3. **Gifts ⊙⇒28(2)—Delivery of bonds to bank for donee and delivery of receipt to donee held valid gift of bonds.**

Delivery of bonds to bank for donee and taking of receipt in her name, which was delivered to her, but replaced in donor's safe, *held* complete valid gift, notwithstanding donor inaccurately spoke of donee as his "daughter," and subsequently had interest coupons credited to his account.

Appeal from Supreme Court of District of Columbia.

Interpleader proceeding by the Columbia National Bank of Washington against James M. Conlon, administrator of the estate of Mary A. Rudden, deceased, and Margaret B. Turley, individually and as administratrix c. t. a. of the estate of John Rudden, deceased. From a decree for Margaret B. Turley individually, James M. Conlon appeals. Affirmed.

S. McC. Hawken and G. F. Havell, both of Washington, D. C., for appellant.

W. M. Lewin and T. H. Duckett, both of Washington, D. C., for appellee.

Before MARTIN. Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. In the lower court an interpleader was ordered between Margaret B. Turley, individually and also as administratrix c. t. a. of the estate of John Rudden, deceased, and James M. Conlon, administrator of the estate of Mary A. Rudden, deceased, to determine the ownership as between said parties of certain Victory notes or bonds of the aggregate value of $10,500, then in the custody of the Columbia National Bank of Washington as bailee. The claimants accordingly filed their respective pleadings, and the issues were submitted to the court upon the evidence, whereupon the court adjudged Margaret B. Turley individually to be the owner of the bonds, and entered a final decree in her favor. This appeal followed. The bonds have since been converted into cash, which is now held by trustees subject to the orders of the court.

It appears that on October 25, 1918, John Rudden, a resident of the District of Columbia, duly executed a written instrument as and for his last will and testament in case of his decease, whereby his wife, Mary A. Rudden, was to have his personal property absolutely, except his furniture business, which was to go to Margaret B. Turley, his niece, whom he called his adopted daughter in the will, upon condition that she pay all of his debts, and further pay to his wife the sum of $100 per month during her lifetime. His real estate was to go to his wife for life, and at her death, or in case she died before the testator, it was to go to Margaret B. Turley absolutely.

It does not appear in the record whether Margaret B. Turley, who was also known as Margaret V. Turley, was ever legally adopted as a daughter by the Ruddens, but it may be inferred that there was no such legal adoption; also that there was no issue of their marriage then living. It appears that about a year after the execution of the will Mr. Rudden made a cash sale of certain real estate which he had owned for many years; that he thereupon took the proceeds of the sale to the Columbia National Bank and directed the cashier to buy Victory notes or bonds therewith, and that the cashier accordingly purchased the bonds now in question. When these were ready for delivery, Mr. Rudden was notified and came to the bank, where the bonds were shown to him, whereupon he said, "Here, now, I want these placed in safe-keeping for my daughter, and I want a receipt made out in her name." He added, "The reason for this is, if anything happens to me, I want my daughter to have these bonds." The bonds were then placed in an envelope, marked "Margaret V. Turley," and this was placed in the safe-keeping department of the bank. At the same time the following receipt was written upon bank stationery, signed by the cashier, and delivered to Mr. Rudden:

"Oct. 6, 1919.

"Received of Margaret V. Turley $10,500 in Victory 4¾ per cent. notes for safe keeping.

"[Signed]    C. Corson, Cashier."

Mr. Rudden took the receipt to his office, and placed it in the strong box of his safe. In the latter part of the same month, Margaret B. Turley, who resided at Chattanooga, was at the office of Mr. Rudden in the city of Washington, engaged in conversation with him, when Mr. Rudden gave the keys of his safe to a clerk, according to his custom, for he never opened the safe himself, and directed the clerk to get the receipt from the strong box for him. The clerk got the receipt for Mr. Rudden, who then presented it to Mrs. Turley, with some statement, which the clerk as a witness was unable to repeat, and Mrs. Turley then made the remark to keep it until she went home. Mrs. Turley then took the receipt herself and put it in the safe, whereupon the clerk closed the safe and handed the keys back to Mr. Rudden. The clerk often saw the receipt afterwards in the place where it was then put, and it was found there after the death of Mr. Rudden. Mrs. Turley never again had the receipt in her hands during Mr. Rudden's lifetime, nor did she ever go to the bank to inquire about the bonds, or personally obtain manual possession of them until after his death.

It appears that on December 15, 1919, the semiannual interest coupons attached to the bonds became payable, and that Mr. Rudden then went to the bank and instructed the cashier to have the coupons clipped from the bonds and credited to his bank account, which was done. The record contains the testimony of four several witnesses to the effect that after the time when the bonds were purchased Mr. Rudden stated to them in different conversations that he had given the bonds to Mrs. Turley, in one instance adding the statement that "he knew that she would take care of his wife in case anything happened to him."

John Rudden died in the month of January following the purchase of the bonds. His wife died intestate about two weeks later, leaving certain next of kin, and the appellant is the administrator of her estate. The last will and testament of Mr. Rudden, above referred to, was duly admitted to probate and record. The bonds in the meantime remained in the custody of the bank, and the question involved in this case is whether the foregoing facts show a valid gift of them to Mrs. Turley, or whether they became assets of Mr. Rudden's estate, to be disposed of according to the terms of his will. The lower court held that there had been a valid gift of the bonds to Mrs. Turley, and accordingly adjudged the proceeds thereof to her.

[1, 2] We agree with the decree of the lower court. It is, of course, elementary that in order to constitute a valid gift of property inter vivos there must in general be an actual delivery thereof to the donee, with an intention upon the part of the donor to divest himself of the title, dominion, and control over the subject of the gift, and to invest the donee therewith. Lee v. Lee, 5 F.(2d) 767, 55 App. D. C. 344; Lust v. Miller, Custodian, 4 F.(2d) 293, 55 App. D. C. 217; 28 Corpus Juris, p. 626; Allen-West Co. v. Grumbles, 129 F. 287, 63 C. C. A. 401. Nevertheless, "delivery of the property to a third person as agent or trustee for the use of the donee, and not as agent of the donor, under such circumstances as indicate that the donor relinquishes all dominion and control over the property, is a sufficient delivery to complete the gift, which in such case is not revoked by the subsequent death of the donor before the property has been actually delivered to the donee. * * * Knowledge of the gift on the donee's part is not necessary to render it effective, since the assent of the donee may be implied." 28 Corpus Juris, p. 640, § 32; 12 R. C. L. p. 934; Martin v. Funk, Adm'r, 75 N. Y. 134, 31 Am. Rep. 446.

[3] The gift now in question responds to the foregoing conditions. The donor unconditionally parted with the possession of the bonds by delivering them to the bank as bailee for the donee alone, and accepted a receipt from the bank to that effect. Afterwards this receipt was delivered by the donor to the donee, who thereupon dealt with it as her own, leaving it in the donor's strong box for safe-keeping until her return home. This conduct of the donor was sufficient evidence of his intention to invest the donee with full title and dominion over the property. The explanation of the donor's failure to make an immediate manual delivery of the bonds to the donee is easily understood when the great value of the bonds, as well as the danger of losing them unless left in a safe place, is remembered. Moreover, the donee lived in a distant city, and was not present at the time when the bonds were purchased and left with the bank.

The statement of the donor to the cashier, at the time of the deposit, that his reason for making it was that, if anything happened to him, he wanted "his daughter" to have the bonds, is not inconsistent with the theory of a gift in præsenti, and in view of all the circumstances it should not be given the effect of overcoming the plain force

and effect of the written receipt given at the time of the transaction. The same statement applies, also, to the collection of the semiannual interest upon the bonds by the donor; for, if the gift was already complete, no subsequent action of the donor alone could rescind it, and, moreover, the interest may have been collected for the benefit of the donee. The repeated declarations of the donor that he had given the bonds to the donee tend to show his interpretation of the transaction. Supple v. Bank, 198 Mass. 393, 397, 84 N. E. 432, 126 Am. St. Rep. 451.

The decree is affirmed, with costs.